Good morning, your honors. Thank you for the invitation. Marthine Robles-Avila for the petitioner, Jaspal Singh Uppal. The statute in question here, your honor, is a Canadian statute for aggravated assault, which says, everyone commits an aggravated assault who wounds, maims, disfigures, or endangers the life of another. That's the statute that we have. And our position is that it's controlled by a couple of the cases here in the circuit, one of which, your honor, Judge Berzon wrote, Galeana Mendoza, which said that battery and assault offenses, which necessarily involve the intentional infliction of some kind of serious injury, would amount to a crime involving moral turpitude. And I think the board's decision, Senator, for example, matter of Senator, also would bear that out. In this case, there are two actus reus components or two acts within the statute. One of them is an assault, which, of course, has to be an intentional assault, an intentional application of force against either the person, and that force can be direct or indirect. And the other is there has to be a result, the result being the wounding, maiming, harming, disfiguring, or endangering the life of another. That statute has been interpreted to mean whether or not a reasonable person would have recognized that by committing the underlying assault, the result would occur or that it would place, there would be a risk that one of the results would follow from the action, which is an objective, of course, standard. And our position is that that objective standard has negligence as well as recklessness. Because you don't have to, you don't have to appreciate, you don't have to know that there's a risk that it's going to happen. You just have to be, you can be unaware. It can be an unknown risk that you're unaware of and that you nonetheless act within the assault, which results in the harm. And our position is that because it involves negligence or because it can be caused negligently as well as recklessly, and recklessly may, may in fact satisfy a crime involving moral turpitude, but negligent would not. And in this case, the board and the IJ both stopped at step one of Taylor and Shepard. They said the terms of the statute alone, we find that it's a crime involving moral turpitude categorically. And they did not go to the expressly found, we're not going to go to the modified categorical approach. So the documents that are in the record don't even come into play. And you kind of switch gears from where you started, I think, in your argument. Because you began with the actus reus and then merged suddenly into the mens rea. Now, why isn't you seem to concede at the beginning, and I think the concession may be right, that where you have an act that causes an intentional act, and the act itself is intentional, and it causes a serious injury, which is what the statute seems to require, that that under Galeana and other cases is sufficient, and that the mens rea, when you have a serious injury and an intentional act, no additional mens rea is necessary? Well, I think Judge Fletcher in Nicanor Romero v. McLaughlin, he says that the actus reus and the mens rea have to act in concert in order for there to be a CMT. But isn't it kind of a sliding scale? I mean, the more serious the actus reus, the mens rea kind of goes down. And here we have mens rea, which is intentional and knowing, but doesn't have to intend the harm, but it has to intend the force. Precisely. It has to intend the force, but not the harm. And I think that's where we're trying to say to the Court that based solely on step one of Taylor, now, if we have to go further, and obviously if we go back to the I mean, step three, we're clearly lost. Our facts are bad. But on the basis of the board and the IJ's decision, at step one of Taylor So what good does it do? Because I was about to say the same thing to you. I mean, where are we here? We're going to send you back and you're going to lose, on your own theory. Well, it's nonetheless a victory, maybe not. It may be a pyrrhic victory. I agree. I mean, but we also are challenging the admissibility of some of those documents that have been in there. So we would continue to raise those challenges, which I think kind of fell away. Because in this case, the board said, we're not going to go as to the fraud. We're going to stick with the CMT and we're not even going to write any other ground of removability. And there were only two grounds of removability, one of them for the CMT and the other for the fraud. However, as I understand it, up from the record, you didn't even challenge the authenticity of the documents, nor to deny you were charged with the offense. Actually, we did, Your Honor. And we did, I think, in our opening brief, as well as if the board challenged the offense. In front of the IJ, where did you challenge the authenticity of the documents that they had? I didn't find it. And nor did I find that you denied that you were charged with the offense. That was the big part. I mean, in fact, you said you were charged with the offense. All you're arguing about is whether it's moral turpitude. Well, it's true that we do not deny that he's been convicted. Is that what you're saying, Judge? Well, you did that. But also, I didn't see where you challenged the authenticity of the documents that were used. We did, actually. And the court, in fact, addressed that. And actually, if you look at 58 through 59 of the record. I'll look. And also, I think it goes on to 59, where we said that the documents were not properly authenticated. And we allege that they were not. But again, I mean, I agree that. Well, I mean, I think that issue kind of fell away, as I said, because the fraud ground was not sustained by the board. They expressly passed on that. Do you agree, then, the intent to act is enough in this particular situation? Can you repeat that, Your Honor? Do you agree that the intent to act is enough in this situation for the crime of moral turpitude? I don't think that the intent to commit the assault is enough, no. What are you going to do with Galliano, 465, Fed Third, 160 or 1060, note 10? I think Galliano, I mean, those are supports of our case. That case said that battery offenses that necessarily involve the intentional infliction of harm would amount to a CMT. But this one does. That's the problem. Well, but it doesn't. It also includes negligence. I mean, I think that's where I'm saying you have to divide the acts. I think you have to divide the underlying battery or the underlying assault from the harm. And the harm under Canadian law is whether or not a reasonable person would have realized that that risk, that there was a risk that one of those results would follow. That would include negligent conduct. You don't have to be aware of the risk. It can be an unknown risk. And there's nothing inherently. My worry, I guess, with your argument is if I see aggravated assault, and I read the Canadian statute, I've got aggravated assault. If it wounds, maims, disfigures or endangers the life of that person, I've got to find out what assault is. So I've got to go to the Canadian code about assault. And when I go to 265.1, there's nothing in there where it isn't intentional. It is intentional, but it's an intentional application of force. It's no – I mean, it's no different than – I mean, Judge Bersan, I think, in Galeano, you mentioned that or – excuse me. You said that the perpetrator only needs to intend to commit the act, not the intent to injure. Your Honor made that distinction yourself in Galeano-Mendoza, and I think that's important. All right. So basically, the intent – now, there are three possibilities with regard to intent. And I gather that this statute is the middle one. I mean, it's not simply that you have to intend that the – that your physical action has to be intentional, i.e., you intend to raise your hand. You have to intend to use force on the other person. Correct. But you don't have to intend to hurt them. Precisely. And I have a minute and a half if you want to reserve the time. Yes, I do. Thank you, Your Honor. Good morning. May it please the Court. My name is Tiffany Walters Kleiner, and I represent Respondent, the United States Attorney General. In this case, the Board properly found that Mr. Epple's conviction for aggravated assault under Section 268 of the Criminal Code of Canada is categorically a crime involving moral turpitude, because it requires intentional conduct and contains an aggravating dimension that increases the culpability of the offense. Namely, that the victim be wounded, maimed, disfigured, or his or her life endangered. The statute 268 requires that the individual commit assault under 265, which requires an intentional act. The results of the act, the wounding, maiming, disfiguring, or endangerment of the life, must be reasonably foreseeable to the person when they commit the intentional act of assault. Therefore, this case involves conduct that is both willful and involves the necessary base, vile, or depraved nature. If somebody gently touched somebody in a nonviolent way, but they somehow they then were off balance as a result, fell on something hard and hurt themselves, would that violate the statute? I don't believe it would, because the reasonable, foreseeable consequences of a light touch would not be some sort of serious injury. So that nexus between the assault, the simple assault under 265 and the aggravating dimension. So the reasonable objective knowledge part, although it doesn't help on the men's raid, basically helps to define the nature of the act? Yes. The intentional act must be such that one could reasonably foresee the results from that act. So such an act where there's no conceivable ability to foresee that a gentle touch would actually create this sort of injury, that would not be sufficient to sustain a conviction under 268, which is the aggravating dimension here. In addition, under Galeana, this case is distinguishable, because in Galeana, there was no injury requirement. Here, there's clearly an injury requirement, and it's more than just any injury. It actually requires the maiming, disfiguring, or endangering the life of the victim. So it's significantly more serious. Just to get to the other half of the case for the moment, assuming we have found some problem with this, and I'm not saying that we would, what happened here was the I.J. just refused to have the hearing. They refused to have one, didn't have the hearing. So in terms of whether they could have challenged the authenticity of these documents, they never really had a chance, because he didn't hold the hearing. So the question is go ahead. Do you want to comment on that? I do believe that they did have the chance to challenge the inadmissibility of the documents, and that at a prior hearing, they indicated their concerns and they indicated that they were seeking relief in the form of the termination of the proceedings. Right. And they, in fact, filed a written motion to terminate in which they made their argument regarding the inadmissibility of the documents. But they never had a chance to adjudicate the question, to cross-examine anybody or to – and even the government seemed to anticipate that there were actually going to be a hearing in which there was – or challenges to the people who were – to the authenticity, which involves some factual material. For my reading of the record, the primary argument regarding the cross-examination deals with the first charge, because it involved the 261, where the immigration officer actually made allegations regarding an interview he had with Mr. Uppel. But what about – I guess what I want to get to is that if we really needed these documents, I would find them extremely troubling, because they – although it's true that one doesn't necessarily need authenticity and authentication from the Canadian officials, there was no way you could – here we have a signature by somebody who can't even read their name. It doesn't – unlike the one in the case – I can't get the name of the case, but the case law in which we upheld this, which at least indicated where he'd gotten them from, and there's no indication of where he got them from, who he got them from, where he was when he was – there was nothing. And if the agency is using this kind of authentication regularly, they really ought to stop, because it's not going to work. I believe under Snooker's cruise it also involved an authentication by an immigration officer. But it was a different authentication. You could tell who the person was. He said his name. And he said that he'd gotten them from some terminable place. This one says nothing. The authentication is very limited. The documents on their face appear to be clearly what they are. They appear to be official records from Canada. They involve the sentencing statement of the judge who rendered the sentence in Mr. Ostrowski's case. But the requirement exists for a reason, and this does not fulfill the reason. I'm sorry? The requirement of authentication exists for a reason. And this manner – and what concerns me is I assume this is not the only case in which they used a stamp. The stamp must be a stamp that's being used all over the agency, and it's not useful. Mm-hmm. Granted, the stamp does have very limited information on it. The Respondent would just simply assert that the information on the face of the documents, they appear to be reliable. They were stamped as provided by an immigration officer. And Mr. Epple does not contest that they are, in fact, what they purport to be. Well, he is contesting. He wanted to have a hearing about it, and he wasn't able to do that. Well, he presented his arguments in his motion to terminate. They're essentially legal arguments. His legal argument is this is an adequate authentication, which it isn't. So if that were the only issue, then he should – if it mattered, he should win. Well, he's not contested that he was, in fact, convicted of this crime. That's true. But if we needed to go to a modified categorical approach is what I'm saying. I don't see that we have the documents. If we needed to go to a modified categorical approach, it might need to be remanded to the immigration judge so that there could be a hearing on the issue of the admissibility of the documents. The Respondent would simply use that. Is there anything you want to add as to the first prong of Taylor? As to the first prong of Taylor, as to the categorical approach. We would assert that the documents, the conviction here under the categorical approach, the categorical approach is sufficient to find that this is a crime involving moral – moral turpitude simply on the plain language of the statute in this case. Thank you very much. Thank you very much. I'll be very brief, Your Honors. I think Alianna is on point because that case does state that the intent has to go to the injury. And here the intent – Where does it say that? If there was – if there was in fact an injury and if it was an act that objectively was severe enough to cause the injury? Where does it say that in Galeana? Does Galeana say that, yes? Galeana, it's – I mean, I would point out specifically that Judge – Judge Callahan concurred specially to say that we were particularly influenced by the California's court's determinations that the statute does not require either a showing of bodily harm or pain or that the perpetrator intended to injure, he only needs to intend to commit the act. The quotation from Galeana that I'm referring to says, Assault and battery offenses that necessarily involve the intentional infliction of serious bodily injury on another have been held to involve moral turpitude because the – because of the intentionally injurious conduct. Our contention is that because, as the Godin case says, it is not necessary that there be an intent to wound, maim or disfigure because that refers solely to the consequences. And we think that if you – if you split the – if you split the statute up, there doesn't have to be an intent to commit the harm. It's only an intent to commit the assault, which we're saying is it's different. And as Judge Fletcher said and Nicanor, the two have to work in concert. In other words, the act has to be accompanied by the requisite intent. And I'm almost out of time. Does that have any other questions?  Kagan.
judges: Thompson, Berzon, Smith